UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-87-B-W |
| | ) | |
| DAVID RYAN JACQUES | ) | |

**PRESENTENCE ORDER**

Having pleaded guilty to importation of oxycodone and assaulting a federal officer, David Ryan Jacques challenges the Probation Office's decision to group the counts of conviction for purposes of calculating his sentencing range under the United States Sentencing Guidelines. This Court concludes the counts were properly grouped under U.S.S.G. § 3D1.2(c) because assault on a federal officer is correctly treated as an adjustment to the guideline applicable to importation of oxycodone.

**I.     Procedural Background**

On January 6, 2006, David Jacques pleaded guilty to one count of assault on a federal officer in violation of 18 U.S.C. § 111(a) and one count of importation of oxycodone in violation of 21 U.S.C. § 952(a). (Docket # 21). In its Revised Presentence Investigation Report (PSR), the Probation Office began with a base offense level of 20 under U.S.S.G. § 2D1.1(c)(10).[1] *PSR* at ¶ 15. Applying the grouping provisions of U.S.S.G. § 3D1.2(c), the PSR then treated the assault on a federal officer count as an adjustment to the importation of oxycodone count and enhanced the original adjusted offense to 23 under U.S.S.G. § 3A1.2(a)(1), which provides for a three-level increase if the victim was a government official. *PSR* at ¶¶ 13, 17. After applying the three-level reduction for

---

[1] The PSR holds Mr. Jacques accountable for 42.88 Kilograms of marijuana equivalent drugs.

acceptance of responsibility under U.S.S.G. § 3E1.1, the result was an adjusted offense level of 20 and a sentencing range, based on a criminal history category of I, between 33 and 41 months. *PSR* at ¶¶ 21, 24, 36.

Mr. Jacques objects, arguing that grouping under these circumstances improperly subjects the defendant to "double counting". *Def.'s Sentencing Mem.* at 2-3 (Docket # 28). According to Mr. Jacques, if the counts are not grouped, the total offense level for Count I – the assault - would be 13; the total offense level for Count II – the oxycodone charge - would remain 20;[2] and, under § 3D1.4(b), an additional unit would be added, resulting in an adjusted offense level of 21, which after adjustments for acceptance, results in a total offense level of 18 for a sentencing range, based on his criminal history category, between 27 and 33 months. *Id.* at 4.

## II. Statement of Facts[3]

On November 3, 2005, Customs and Border Protection Officer (CBPO) Anne Nixon received information from a Calais, Maine cab driver that he had picked up a man at an alleged drug dealer's home in Calais and transported him to another alleged drug dealer's home in St. Stephen, New Brunswick. The cab driver described the person as "baby-faced" with a goatee. Later that day, a Canadian taxi presented for inspection at the Milltown, Maine Port of Entry. The passenger in the taxi fit the Calais taxi driver's description. After identifying himself as David Ryan Jacques, he was asked to proceed to the passenger processing lobby for secondary inspection.

---

[2] Mr. Jacques actually asserts that his Total Offense Level should be 18 under U.S.S.G. § 2D1.1(c)(11), because he also incorporates in his memorandum a dispute about the drug quantity in the PSR. However, without prejudice to the issue of drug quantity, this Court is using the original drug quantity calculations in the PSR to provide a uniform base for comparing the impact of the grouping issue.

[3] During Mr. Jacques's January 6, 2006 Rule 11 proceeding, he admitted the facts in a written Prosecution Version of the Offense. *Prosecution Version of the Offense* (Docket # 20). The Court derived its statement of facts from that document.

CBPO Shayne Brennan performed a pocket search of Mr. Jacques, but did not discover any illegal drugs or other contraband. During the inspection process, however, CBPO Brennan observed that Mr. Jacques "was extremely nervous and agitated and continually paced and looked out the window, and repeatedly got up from his chair." *Prosecution Version of the Offense* at 1 (Docket # 20)(*Prosecution Version*). At some point during inspection, Mr. Jacques ran for the door in an attempt to leave the Customs and Border Patrol station before the inspection process was complete. After struggling with three CBPOs, Mr. Jacques was subdued, handcuffed, and admitted he was carrying Oxycontin pills on his person. CBPO Brennan then recovered a paper bag from the pocket of a pair of shorts Mr. Jacques was wearing beneath his pants. The bag contained twenty-four eighty milligram Oxycontin pills of Canadian manufacture.

### III. Discussion

#### a. U.S.S.G. § 3D1.2(c)

Part D of the Guidelines explains how to address multiple counts in calculating a single offense level. The Introductory Commentary states that the rules of Part D "seek to provide incremental punishment for significant additional criminal conduct." U.S.S.G. Ch. 3, Pt. D, Introductory Commentary. However, the Guidelines do not increase the range if the offenses charged in multiple-count indictments are "so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range."[4] *Id.* The grouping provisions assist the determination as to whether the

---

[4] The impact of grouping can be counterintuitive. As Mr. Jacques acknowledges, it is not uncommon for defendants to argue that offenses should be grouped under U.S.S.G. § 3D1.2(c) to avoid double counting. *Def.'s Sentencing Mem.* at 3 (citing *United States v. Lombardi*, 5 F.3d 568 (1st Cir. 1993)). Here, however, as demonstrated above, the effect of grouping is to increase Mr. Jacques' sentencing range and it is the defendant who is objecting.

conduct is to be deemed "significant additional criminal conduct", and therefore not grouped, or "so closely intertwined" that they should be grouped.

U.S.S.G. § 3D1.2(c) sets forth the general rule that courts should group counts of conviction "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." The commentary to § 3D1.2 explains:

> Subsection (c) provides that when conduct that represents a separate count, *e.g.*, bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior. Of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that (assuming they could be joined together) a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together. The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection. . . . [A] count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection (c) . . .

U.S.S.G. § 3D1.2 app. note 5.

Grouping under § 3D1.2(c) is proper where two offenses are closely related and the conduct underlying one count can be used as an upward adjustment to the other. *See United States v. Sedoma*, 332 F.3d 20, 27 (1st Cir. 2003) (grouping under § 3D1.2(c) proper where "conduct 'embodied' in the second offense is 'treated as an adjustment' to the other offense"). *See also United States v. Martin,* 363 F.3d 25, 34-40 (1st Cir. 2004).

The Government argues:

> Just as an assault causing bodily injury to a teller is properly considered as closely related to, and providing a sentencing enhancement for, the more serious offense of bank robbery during which the assault took place, so to [sic] must the defendant's

4

> assault of a CBP officer be considered closely related to, and provide an enhancement for, the more serious offense of drug smuggling, during which the assault occurred.

*Gov.'s Sentencing Mem.* at 5 (Docket # 29)(citations omitted).

Here, the assault on federal officers was part and parcel of Defendant's attempt to smuggle contraband across the United States-Canadian border. The assault occurred while Mr. Jacques was being detained for secondary inspection at the border, and during border agents' attempt to ascertain if he was smuggling illegal drugs into this country. Moreover, by admitting the facts of the Prosecution Version, Mr. Jacques has admitted that he attempted to flee the inspection area to avoid the completion of the inspection process. *See Prosecution Version* at 1-2 ("Eventually Jacques rushed for the door in an attempt to leave the CBP station before the inspection process was complete"). Finally, the Prosecution Version confirms that the struggle ensued during Mr. Jacques's attempt to flee, which led to the assault charge. *Id.* at 2.

This Court concludes that the counts of conviction are "closely related" within the meaning of application note 5, and that the analogy to assault during a robbery, *see* U.S.S.G. Ch. 3, Pt. D, Introductory Commentary, is sound. *See also United States v. Olunloyo,* 10 F.3d 578, 581 (8th Cir. 1993)(affirming sentencing court's decision to group counts pursuant to § 3D1.2(c) and to treat § 111 violation as an enhancement to drug offense counts when defendant resisted DEA agents during a heroin sale).

### b. U.S.S.G. § 3A1.2(a)

Having determined that the counts were properly grouped, the question remains whether the adjustment under § 3A1.2(a) results in improper "double counting". Once grouped, the commentary to U.S.S.G. § 3D1.3 instructs sentencing courts to use as a starting point the highest offense level of the counts in the group. U.S.S.G. § 3D1.3 app.

5

note 2; *see also* U.S.S.G. Ch. 3, Pt. D, Introductory Commentary ("The most serious offense is used as a starting point. The other counts determine how much to increase the offense level"). Here, the base offense level for Count II - importation of oxycodone - is twenty under U.S.S.G. § 2D1.1(c)(10). The base offense level for Count I - assaulting a federal officer - is only ten under U.S.S.G. § 2A2.4. Under § 3D1.3, the calculation properly began at 20, the higher offense level.

The Probation Officer then treated the assault as an aggravating factor quantified by a three-level Chapter Three adjustment under U.S.S.G. § 3A1.2(a). *PSR* at ¶ 17. Mr. Jacques contends this was improper. He argues that application note 2 of § 3A1.2(a) provides that the official victim adjustment "will not apply where the offense guideline specifically incorporates this factor" and contends that § 2A2.4 – the base offense level for Count I - specifically incorporates this factor. *Def.'s Sentencing Mem.* at 3.

Section 2A2.4 provides for a three-level increase if the defendant's obstructing or impeding officers "involved physical contact," U.S.S.G. § 2A2.4(b)(1), and if § 2A2.4 were being used as the base offense level, Mr. Jacques would be correct that the additional enhancement under § 3A1.2 would not apply. U.S.S.G. § 2A2.4 app. note 2 ("The base offense level incorporates the fact that the victim was a governmental officer performing official duties. Therefore, do not apply § 3A1.2 (Official Victim) unless, pursuant to subsection (c), the offense level is determined under § 2A2.2 (Aggravated Assault).").

However, application note 2 of § 3A1.2 also states that while the enhancement is not to be applied "if the offense guideline specifically incorporates this factor", the "<u>only</u> offense guideline in Chapter Two that specifically incorporates this factor is § 2A2.4".

6

U.S.S.G. § 3A1.2 app. note 2 (emphasis supplied). The flaw in Mr. Jacques' argument is that the base offense guideline here is not § 2A2.4, which would have specifically incorporated the official victim factor, but § 2D1.1, which does not. *See Gov.'s Sentencing Mem.* at 5-6.[5]

### IV.     Conclusion

This Court determines that the conduct embodied in the Defendant's charge for assaulting a federal officer is properly treated as an adjustment to the guideline applicable to his charge for illegal importation of oxycodone, since he assaulted the officer during the investigation of his illegal importation. Therefore, the two counts are properly grouped under U.S.S.G. § 3D1.2(c). This Court further concludes that because U.S.S.G. § 2D1.1 is properly used to calculate the base offense level, the application of the enhancement in U.S.S.G. § 3A1.2(a) does not constitute double counting.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2006

---

[5] One lingering question is whether § 3A1.2 (Official Victim) is the appropriate adjustment. *Olunloyo*, which dealt with a defendant who, like Mr. Jacques, resisted a drug-related arrest, applied the two-level enhancement under § 3C1.1 (Obstruction of Justice). The Government points out that *Olunloyo* did not discuss whether a three-level adjustment would have been appropriate under § 3A1.2 and it argues the two-level adjustment for obstruction of justice "does not take into account the federal status of the person who was the object of the obstructive conduct". *See Gov.'s Sentencing Mem.* at 5 n.2. In support, the Government cites *United States v. Kleinebreil,* 966 F.2d 945 (5th Cir. 1992). *Kleinebreil* is not strong support for the Government's position, since the district court did not group the drug and assault charges for sentencing purposes. *Id.* at 954. Nevertheless, the Fifth Circuit noted that "if the assault and marijuana counts comprised a single group", the Guidelines "would allow an increase in the offense level for the marijuana group based on the official status of the assault victims" pursuant to § 3A1.2. *Id.*

Even setting *Kleinebreil* aside, here Mr. Jacques pleaded guilty to a violation of 18 U.S.C. § 111(a), which addresses assaults against federal officials while they are engaged in the performance of their official duties. 18 U.S.C. § 111(a). Further, Mr. Jacques has admitted he was attempting to cross the border, had been referred to secondary inspection, and was the subject of a secondary inspection, when he bolted for the door of the CBP station, and assaulted the federal officers after they pursued and apprehended him. The charge and the facts clearly fall within the scope of § 3A1.2(a), which provides for a three-level enhancement if the victim was "a government officer or employee" and "the offense of conviction was motivated by such status". *See id.*